UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| REPLICATION MEDICAL, INC., | : |
| Plaintiff, | : Civil Action No. 15-1685 (PGS)(DEA) |
| v. | : **MEMORANDUM OPINION** |
| | : **AND ORDER** |
| AUREUS MEDICAL GMBH, *et al.*, | : |
| Defendants. | : |

ARPERT, Magistrate Judge

This matter comes before the Court on a Motion by Defendant Aureus Medical GMBH ("Aureus" or "Defendant") to set aside the default entered by the Clerk on May 11, 2015. *See* Dkt. No. 28. Plaintiff Replication Medical, Inc. ("RMI") opposes Aureus' Motion. *See* Dkt. No. 32. For the reasons set forth below, Aureus' Motion to set aside default is GRANTED.

I.   BACKGROUND

RMI develops and markets hydrogel surgical implants which are designed to treat degenerative disc diseases (the "Implants"). Dkt. No. 32 at p. 3. RMI holds several patents for the Implants in the United States and elsewhere and markets the Implants under the trade names Gelstix™ ("Gelstix") and NucleoFix™ ("NucleoFix"). *Id*. While the Implants are not currently approved for sale in the United States, RMI claims that "they are the subject of on-going research, scholarly attention, and marketing efforts in the United States." *Id.* at p. 4. On May 15, 2013, RMI and Aureus entered into an agreement (the "Distribution Agreement") which granted

Aureus a limited license to market the Implants under the trade name NucleoFix in Germany, Switzerland, Belgium and Austria. *Id.*

According to RMI, Aureus breached the Distribution Agreement by registering the NecleoFix trademark in Germany and by attempting to register the NucleoFix and GelStix as trademarks in the European Union. *Id.* at p. 5. In addition, RMI claims that Aureus "attempted to market the Implants outside the permissible territory, including in the United States."[1] *Id.* As a result of Aureus' alleged breaches of the Distribution Agreement, RMI terminated the Distribution Agreement on February 14, 2015. Dkt. No. 32 at p. 5. RMI claims that "Aureus has taken significant steps aimed at creating the false impression that it is the owner and developer of the Implants and other RMI intellectual property" and "holds itself out to various markets around the world, including the United States, as the exclusive distributor of the Implants." *Id.*

On March 6, 2015, RMI filed a Complaint against Aureus and Dirk Kuyper (collectively "Defendants") asserting fourteen causes of action arising out of Defendants' alleged breach of the Distribution Agreement.[2] *See* Dkt. No. 1. According to RMI, Aureus was served on April 16, 2015 by hand delivery of the Summons and Complaint to Aureus' Chief Executive Officer and President, Dirk Kemmstedt, in San Diego, California while Mr. Kemmstedt was attending an industry convention. Dkt. No. 32 at p. 6. Aureus' Answer was due on May 6, 2015. *See* Dkt. No. 7. Aureus failed to respond to the Complaint and on May 7, 2015, RMI requested that default be entered as to Aureus pursuant to Federal Rule of Civil Procedure 55(a). *See* Dkt. No. 15. On May 11, 2015, the Clerk entered default as to Aureus.

---

[1] The documents cited by RMI in support of its assertion that Aureus attempted to market the Implants in the United States contain no reference to any alleged actions taken by Aureus which demonstrate an attempt to market the Implants in the United States. *See* Dkt. No. 32 at p. 5 (citing Compl. ¶ 59-60; Prewitt Decl. ¶ 11-15).

[2] According to Aureus, the parties are currently engaged in litigation in Germany over similar claims. Dkt. No. 28 at p. 2.

Aureus claims that shortly after being served, Mr. Kemmstedt contacted Mr. Kuyper, who "advised Mr. Kemmstedt that the Complaint had not been properly served and no response was needed by Aureus." Dkt. No. 28 at p. 2-3. According to Aureus, Mr. Kemmstedt was under the impression that Mr. Kuyper's attorney was present during their conversation, and that the comments allegedly made by Mr. Kuyper were based upon the advice of his attorney *Id.* at p. 3. Based on that reliance, Aureus claims that it believed no response to the Complaint was necessary at the time. *Id.* According to RMI, on May 13, 2015, Mr. Kemmstedt contacted RMI's Chief Executive Officer and President, Ann Prewitt and proposed a settlement. Dkt. No. 32 at p. 6. On May 14, 2015, RMI filed a Motion seeking a Preliminary Injunction which is currently pending before the Court. *See* Dkt. No. 21. Aureus asserts that it was not aware that default had been entered until it received a copy of RMI's Preliminary Injunction Motion in Germany by regular mail on May 19, 2015, at which point Aureus "immediately reached out to counsel in the United States to obtain clarification on the status of the litigation." Dkt. No. 28 at p. 3. According to Aureus, upon learning that default had been entered, it contacted RMI to request their consent to set aside the entry of default, which RMI denied. *Id.* at p. 3-4. Aureus filed the present Motion to vacate default on June 8, 2015. *Id.*

## II.     DISCUSSION

The entry of default and default judgment is governed by Federal Rule of Civil Procedure 55. The power to grant default judgment "has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Hritz v. Woma Corp.,* 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted). Because a default judgment prevents a plaintiff's claims from being decided on the merits, "this court does not favor entry of

3

defaults or default judgments." *United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 194 (3d Cir. 1984). Accordingly, the Third Circuit has clarified that, while "the entry of a default judgment is left primarily to the discretion of the district court," this "discretion is not without limits," and cases should be "disposed of on the merits whenever practicable." *Hritz,* 732 F.2d at 1181 (citations omitted); *see also $55,518.05 in U.S. Currency,* 728 F.2d at 194–95.

Pursuant to Rule 55(c), "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In exercising its discretion to vacate the entry of default, the Court must consider three factors: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was a result of the defendant's culpable conduct." *Budget Blinds, Inc. v. White,* 536 F.3d 244, 255 (3d Cir. 2008) (citing *$55,518.05 in U.S. Currency,* 728 F.2d at 195).

Any doubts in this inquiry are "to be resolved in favor of the party moving to set aside the default judgment so that cases may be decided on their merits." *Ford v. Consigned Debts & Collections, Inc.,* No. 09–3102, 2010 WL 2758182, at *2 (D.N.J. July 12, 2010) (citing *$55,518.05 in U.S. Currency,* 728 F.2d at 194–95). "'[M]atters involving large sums should not be determined by default judgment if it can reasonably be avoided,' since 'the interests of justice are best served by a trial on the merits.'" *Livingston Powdered Metal, Inc. v. N.L.R.B.,* 669 F.2d 133, 136–37 (3d Cir. 1982) (quoting *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242, 245 (3d Cir. 1951)).

**A. Meritorious Defense**

The Third Circuit "consider[s] the meritorious-defense factor the 'threshold issue....'" *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.,* 175 F. App'x 519, 522 (3d Cir. 2006) (quoting *Hritz,* 732 F.2d at 1181). The defendant is required to "'set forth with some

4

specificity the grounds for his defense.'" *Id.* The court then "look[s] at the substance of that defense to determine whether it is meritorious." *Id.* (citation omitted). But the court "need not decide the legal issue' at this stage of review." *Id.* (quoting *Emcasco Ins. Co. v. Sambrick,* 834 F.2d 71, 74 (3d Cir. 1987)).

Here, Aureus argues that this Court lacks personal jurisdiction over it. Dkt. No. 28 at p. 7. The personal jurisdiction inquiry in New Jersey "is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir. 1998) (citation omitted)."[T]he New Jersey Supreme Court has made it clear that New Jersey courts look to federal law for the interpretation of the limits on in personam jurisdiction." *Id.* The Due Process Clause allows in personam jurisdiction over nonresidents so long as the defendant "has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (internal quotation marks omitted)). To establish the existence of minimum contacts, "the plaintiff must show that the defendant has purposefully directed its activities toward the residents of the forum state or otherwise purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (citations and quotation marks omitted).

Aureus, a German corporation, claims that it "has an extremely limited connection to the United States generally and the State of New Jersey specifically" and its only contact with New Jersey is a contract signed with RMI, a New Jersey company. Dkt. No. 28 at p. 4. According to Aureus, it does not market or sell any goods or services to the United States and has no physical

or other business presence United States beyond a single unrelated contract with another company in the United States. *Id.* at p. 10. In addition, Aureus argues that the activities arising out the Distribution Agreement bear no relation to New Jersey or the United States as the territory defined in the Distribution Agreement is limited to Germany, Austria, Belgium and Switzerland. *Id.*

In opposition, RMI argues that "the Distribution Agreement contains a clear forum selection clause that provides for exclusive jurisdiction in the courts of New Jersey." Dkt. No. 32 at p. 8. The Distribution Agreement between the parties contains a "Governing Law" provision, which states:

> [t]his Agreement is entered into and shall be governed, construed and enforced in all respects solely and exclusively under the US State of New Jersey Laws. Court of jurisdiction shall be solely the court competent at the seat of Company without giving effect to any law which would result in the application of a different body of law.

Dkt. No. 1, Ex. A at ¶ 14.3. RMI claims that the "seat of Company" referred to in the Governing Law provision is New Jersey, which is identified as RMI's principal place of business in the Distribution Agreement, and that accordingly, the Governing Law provision constitutes a valid and enforceable forum selection clause and serves as a waiver of personal jurisdiction. Dkt. No. 32 at p. 9. In response, Aureus asserts that the Governing Law provision does not constitute a forum selection clause, valid or otherwise. Dkt. No. 28 at p. 8. Aureus contends that the Governing Law provision only contemplates the governing legal authority and does not contain a waiver of personal jurisdiction or select New Jersey as its forum. *Id.*

Here, the Court finds that it is not clear whether the Governing Law provision in the Distribution Agreement is actually a forum selection clause. "In a typical forum selection clause, the parties agree to jurisdiction in a specific court or state." *Harfouche v. Wehbe*, 950 F. Supp. 2d

766, 771 (D.N.J. 2013) (citations omitted). In the present case, although RMI asserts that the "the seat of Company" clearly identifies New Jersey, there is no definition of the "seat of Company" in the Distribution Agreement nor a clear designation of New Jersey as the selected forum for the resolution of disputes arising out of the Distribution Agreement. While at the present juncture, the Court makes no determination as to the validity or meaning of the Governing Law provision, the Court cannot agree with RMI's assertion that the Governing Law provision is a clear and enforceable forum selection clause which amounts to "dispositive evidence that lack of personal jurisdiction cannot satisfy the 'meritorious defense' requirement to set aside default." Dkt. No. 32 at p. 9.

RMI further claims that even in the absence of a valid forum selection clause, this Court has personal jurisdiction over Aureus because Aureus "contracted with a New Jersey company, caused harm to that company in New Jersey, specifically directed its actions at New Jersey, and engaged in misconduct against that company specifically in New Jersey and throughout the United States." *Id.* at p. 9. While RMI repeatedly states that Aureus' alleged misconduct has included activity in the United States, upon a review of the record, it appears that there are two instances of Aureus engaging in alleged misconduct in the United States. First, RMI's Complaint states:

> Upon information and belief Aureus has also been marketing or attempting to market Implants under the NucleoFix trademark in the United States through the internet and other outlets. For example, the website www.betterdiscreplacement.com directs patients to contact a United States spokesperson, and provides a telephone number. At some point, the website was altered to remove language identifying RMI as the developer of the Implants, and add language crediting development of the Implants to Aureus.

Dkt. No. 1 at ¶ 63.

7

Second, the Declaration of Ms. Prewitt filed in support of RMI's Motion for a Preliminary Injunction states:

> In or around November 2014, I understand that Aureus hosted a cocktail hour at a meeting of the North American Spine Society I Annual Meeting in San Francisco, California. I further understand that Aureus advertised 'NucleoFix" as a featured product, and prominently featured Aureus' name in connection with the cocktail hour . . . I was not invited to the cocktail party.

Dkt. No. 21, Prewitt Delc. at ¶ 21. These two rather vague allegations of Aureus' conduct in the United States are inadequate for the Court to conclude that Aureus' assertion that this Court lacks personal jurisdiction is without merit. Accordingly, the Court finds that at this early phase of the litigation, the disagreement as to whether the Court has personal jurisdiction over Aureus is enough to consider the defense meritorious. *See LexisNexis v. Discepolo LLP*, at *3 (D.N.J. May 20, 2014) ("Competing contentions about whether Defendant had sufficient contacts with New Jersey . . . is enough to make the defense meritorious.").

### B. Culpable Conduct

To find a defendant's conduct culpable, "more than mere negligence [must] be demonstrated." *Hritz*, 732 F.2d at 1183. "Reckless disregard for repeated communications from plaintiffs and the court ... can satisfy the culpable conduct standard." *Id.* Culpable conduct, in this context, "is conduct that is taken willfully or in bad faith." *Hill v. Williamsport Police Dept.*, 69 F. App'x 49, 52 (3d Cir. 2003) (quotations omitted).

Here, Aureus claims that after Mr. Kemmstedt received a copy of the Summons and Complaint, he contacted Defendant Kuyper, who advised Mr. Kemmstedt "that the Complaint had not been properly served and no response was needed by Aureus." Dkt. No. 10 at p. 3. Aureus asserts that based on Defendant Kuyper's statements, which Aureus believed to be based on the advice of Defendant Kuyper's attorney, it was under the impression that no response to

8

the Complaint was necessary until it was properly served. *Id.* In response, RMI argues that Aureus has not set forth a "valid excuse for its failure to timely answer the Complaint" and that Aureus' "default was a knowing and strategic decision." Dkt. No. 32 at p. 16. Plaintiff further claims that Mr. Kemmstedt's statement regarding his communication with Defendant Kuyper is "not truthful" and that according to Defendant Kuyper, his "attorney was never in the room during any call he has had with Mr. Kemmstedt and Mr. Kuyper never led Mr. Kemmstedt to believe his attorney was in the room."[3] *Id.* at p. 17.

      Although Plaintiff doubts the veracity of the justification provided by Aureus for its delayed response, "other than failing to answer plaintiff's complaint after it had been properly served, there is no indication that defendant's conduct constitutes the requisite wilfulness or bad faith which is necessary to finding a defendant culpable in the context of failing to timely answer." *Ford v. Consigned Debts & Collections, Inc.*, 2010 WL 2758182, at *2 (D.N.J. July 12, 2010) (quoting *Gross v. Stereo Component Systems, Inc.,* 700 F.2d 120, 124 (3d Cir. 1983)); *see also Blue Ribbon Commodity Traders, Inc. v. Quality Foods Distrib.,* at *3 (E.D.Pa. Dec. 11, 2007) ("Even where neglect is inexcusable, and where the Court cannot condone a defendant's failure to respond to a lawsuit for an extended period of time, culpable conduct warranting the refusal to set aside default must rise to the level of 'flagrant bad faith,' and 'callous disregard of responsibility.'") (citation omitted)).

---

[3] In support of its assertions regarding the veracity of Mr. Kemmstedt's statement that his conversation with Mr. Kuyper led him to believe that a response to the Complaint was not necessary, Plaintiff relies on the Declaration of Ms. Prewitt. *See* Prewett Decl., Dkt. No. 32. In her Declaration, Ms. Prewett states that after Aureus filed the present Motion, she contacted Mr. Kuyper and Mr. Kuyper informed her that "he did not have a conversation with Mr. Kemmstedt regarding service of the Complaint in this matter in which Mr. Kuyper's attorney was present." *Id.* at ¶ 4. Based on the asserted inconsistencies between Mr. Kemmstedt's statement and Ms. Prewett's statement, Plaintiff contends that prior to setting aside the entry of default, "the Court should first conduct an evidentiary hearing so that Mr. Kemmstedt and Mr. Kuyper can be subjected to cross-examination on the allegations contained in the declaration." Dkt. No. 32 at p. 17. At this juncture, the Court does not believe an evidentiary hearing to be a necessary or productive exercise. Accordingly, Plaintiff's request for an evidentiary hearing is denied.

Aureus' response to Plaintiff's Complaint was due on May 6, 2015, Plaintiff requested that default be entered against Aureus on May 8, 2015 and on May 11, 2015, default was entered. During the period between the entry of default on May 11, 2015 and the filing of Aureus' Motion to vacate default on June 8, 2015, Aureus retained counsel, contacted Plaintiff with a settlement offer and requested Plaintiff's consent to vacating the entry of default. Dkt. No. 32 at p. 17. While Plaintiff contends that "Aureus' delay is inexcusable and certainly not consistent with the conduct of an innocent party", it appears to the Court that beyond Aureus' initial failure to timely respond to Plaintiff's Complaint, Aureus has diligently responded to communications from Plaintiff and the Court and has actively participated in this matter. Dkt. *Id.* at p. 18.  Accordingly, because there is no evidence before the Court to suggest that Aureus' has acted with "callous disregard of responsibility" or in "flagrant bad faith", the Court finds that this factor weighs in favor of vacating default.

### C. Prejudice to Plaintiff

While the Court is mindful of Plaintiff's desire to move this case along, "delay in realizing satisfaction or the fact that the plaintiff will have to prove its case on the merits are rarely sufficient to prevent a court from opening up a default." *Itche Corp. v. G.E.S. Bakery, Inc.,* 2008 WL 4416457 at *2 (D.N.J. Sept. 24, 2008) (citing *Feliciano v. Reliant Tooling Co.,* 691 F.2d 653, 656–57 (3d Cir. 1982)). Prejudice under this prong accrues due to a "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." *Id.* "[T]he inevitable dimming of witnesses' memories" is also recognized as a form of prejudice. *Scarborough v. Eubanks,* 747 F.2d 871, 876 (3d Cir. 1984). Here, Plaintiff does not contend that it will be prejudiced by vacating the entry of default and allowing Aureus to file an Answer and there is no indication or assertion before the Court that any evidence has been lost or that

Plaintiff will have any increased difficulty in obtaining relevant discovery.[4] Accordingly, because the Court finds that Aureus has a meritorious defense, RMI will not suffer prejudice and Aureus' conduct was not culpable, Aureus' Motion to vacate the entry of default is GRANTED.

### III.   CONCLUSION AND ORDER

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 8th day of July, 2015,

**ORDERED** that Aureus' Motion to set aside default [Dkt. No. 28] is **GRANTED**; and it is further

**ORDERED** that Aureus' responsive pleading shall be filed no later than 10 days from the entry of this Order.

/s/ Douglas E. Arpert
DOUGLAS E. ARPERT
United States Magistrate Judge

---

[4] While Plaintiff does not identify any prejudice it would suffer if default is vacated, Plaintiff claims that Aureus' filing of the present Motion is untimely. Dkt. No. 32 at p. 17. Default was entered on May 11, 2015 and Aureus filed the present Motion to vacate default on June 8, 2015. The Court finds that the passage of time between the entry of default and Aureus' present Motion to vacate the entry of default has not resulted in any prejudice to Plaintiff.